UNITED STATES of America, Appellee,

v.

Francis A. BEHENNA, Appellant.

No. 75–1991.

United States Court of Appeals, Fourth Circuit.

Submitted Oct. 13, 1976.

Decided March 23, 1977.

Kenneth Eaton, Jr., Florence, S.C. [Court-appointed] on brief for the appellant.

Mark W. Buyck, Jr., U. S. Atty., and Eric Wm. Ruschky, Asst. U. S. Atty., Columbia, S. C., on brief for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

BOREMAN, Senior Circuit Judge:

A jury convicted Francis A. Behenna of making a particularized false statement to two South Carolina licensed firearms dealers in connection with the purchase of firearms, in violation of 18 U.S.C. § 922(a)(6). He appeals, contending that the district court erred in refusing a request to instruct the jury that a defendant's honest and reasonable belief that he could legally purchase a firearm was a defense to the charged violation of the statute.

On November 25, 1974, Behenna purchased three handguns from two federally-licensed dealers in Dillon, South Carolina.

In his testimony Behenna admitted that he purchased the guns and that he signed the forms required in connection with such transactions but insisted that he reasonably and honestly believed that he was a South Carolina resident and could legally purchase the weapons. Behenna gave Highway 76, Timmonsville, South Carolina, as his "residence address" on the forms he signed in connection with the gun purchases. Upon investigation it was discovered that the residence address given was a large vacant lot on Highway 76. Behenna testified that it was his intention at the time of the gun purchases to acquire a mobile home and put it out in that vicinity because "I had been out in that area . . . [and] I happened to like it." (Tr. at 72). No evidence was presented at trial which indicated that Behenna had in any manner acquired a lot on Highway 76 in or near Timmonsville. In fact, Behenna had come from New York, where he was in business, to South Carolina only three days before his gun purchases and he left South Carolina on the same day he made his purchases. (Tr. at 65, 82).

Behenna had taken some affirmative action in an attempt to establish proof of his South Carolina residency. When he first sought to purchase a gun at a sporting goods store in Dillon, the clerk told him that it was necessary for him to provide evidence identifying him as a resident of South Carolina.[1] The clerk suggested that a South Carolina driver's license or voter's registration card would be accepted as proper identification. Acting on this advice, the defendant applied for and received a South Carolina voter registration card, listing Highway 76, Timmonsville, as his "residence address." He testified, without

corroboration, that he surrendered his New York voter registration card to the South Carolina registrar. Behenna returned later to the store and used the registration card as identification.

■ The general rule is that the prosecution does not have to show affirmative criminal intent on the part of the accused to establish a violation of section 922(a)(6). *See, e.g., Cody v. United States*, 460 F.2d 34, 38 (8 Cir. 1972). Nevertheless, the statute does require proof that the defendant *knowingly* made a false statement intended or likely to deceive the dealer with respect to any fact material to the lawfulness of the sale. This court has recognized that "[t]he word 'knowingly' in § 922(a)(6) incorporates scienter as an asserted element of the offense." *United States v. Hedgecoe*, 420 F.2d 458, 459 n. 1 (4 Cir. 1970); *see also United States v. Squires*, 440 F.2d 859 (2 Cir. 1971).

■ Had the indictment in the instant case been drawn in different form, Behenna's false statement as to his residence *address* would have been sufficient to establish a violation of the statute. *United States v. Gudger*, 472 F.2d 566, 568 (5 Cir. 1972). However, as the indictment was drawn it did not specifically charge Behenna with making a false statement as to his address; it charged him with "willfully and knowingly" making a false and fictitious written statement, certifying that he was a resident of the State of South Carolina.[2] The district judge instructed the jury that the defendant had violated the statute if he knowingly made a false statement in connection with the purchase of the firearms and then undertook to explain the legal

1. It is unlawful under 18 U.S.C. § 922(b)(3) for any dealer to sell a firearm to "any person who the licensee knows or has reasonable cause to believe does not reside in . . . the State in which licensee's place of business is located . . . ."

2. The indictment states in pertinent part:
[T]he defendant, FRANCIS A. BEHENNA, in connection with the acquisition of a firearm . . . [from] a licensed firearms dealer, did willfully and knowingly make a false and

fictitious statement likely to deceive such dealer with respect to a material fact as to the lawfulness of the sale of such firearm . . . in that he certified in writing on Treasury Department Internal Revenue Service Form 4473 . . . that he was a resident of the State of South Carolina, *when in truth and in fact, as the defendant then and there well knew, he was not a resident of the State of South Carolina* . . . . (Emphasis supplied).

meaning of the term "residence."[3] He failed, however, to explain to the jury that under the specific charge on which Behenna was indicted, it was necessary for them to determine that the defendant had knowingly given a false statement *as to the state of which he was a resident.*[4]

■ Because of the judge's omission, his refusal to give the defendant's requested instruction constitutes prejudicial error. It appears that if defendant reasonably and honestly believed that he was a South Carolina resident and thus entitled to purchase the firearm, this belief would be a defense to the specific charges in the indictment. The indictment was apparently drafted in

such a form as to require proof by the government that Behenna *knew* that he was not a resident of the State of South Carolina at the time of the gun purchase.[5]

In *United States v. Hedgecoe, supra,* the defendant had certified on a federal gun purchase form that he was not prohibited by federal law from purchasing firearms. In fact, however, he was a convicted felon. Hedgecoe pleaded guilty to the charge of violating § 922(a)(6) in the purchase of a firearm but asserted that he did not know at the time of his purchase that he was barred from purchasing firearms. This court ordered Hedgecoe's guilty pleas stricken because "if he did not know of his

---

**3.** The Eighth Circuit in *Cody v. United States,* 460 F.2d 34, 38 (8 Cir. 1972), recognized that the question to be resolved by the jury in a case involving the violation of section 922(a)(6) is whether the defendant "understood the facts, not the law." The jurors in the present case were never presented with the ultimate factual issue—whether Behenna knew he was not a resident of South Carolina—but instead were instructed only on the technical, legal definition of what constitutes residency. The jury should have been permitted to determine whether Behenna reasonably and honestly believed that he *was a resident* at the time he purchased the firearms. Behenna may very well have thought that he had met the technical requirements of becoming a South Carolina resident by obtaining a voter's registration card because the clerk at the sporting goods store had suggested to him that a South Carolina voter registration card or a driver's license would be sufficient identification of a resident to entitle him to purchase a firearm.

**4.** The judge did not read the indictment to the jury at the time of his instructions. He instructed the jury:

[T]he question in this case is: Did the defendant really intend to become a resident of South Carolina when he obtained his voter registration and when he purchased the firearm in question? (Tr. at 102).

This instruction did not adequately present the issue which the jury had to decide to find Behenna guilty of the charges in the indictment. Resolution of the question of whether the defendant intended to become a South Carolina resident does not answer the wholly different question of whether the defendant *knowingly* misrepresented that he *was* a South Carolina resident.

**5.** The phrase "as the defendant then and there well knew, he was not a resident of the State of South Carolina" in the indictment cannot be

treated as surplusage. Professor Wright states, "Words descriptive of what is legally essential to the charge in the indictment cannot be stricken as surplusage." 1 C. Wright, Federal Practice and Procedure § 127, at 278 (3d ed. 1969). In the instant case the above-quoted phrase from the indictment is descriptive of the requirement of scienter, a necessary element to prove a violation of section 922(a)(6). *United States v. Hedgecoe, supra* at 459 n. 1.

If the indictment was limited to merely the statutory language necessary to state a violation of section 922(a)(6), this "bare bones" indictment might be sufficient, but it would not have informed the defendant in what specific manner he allegedly violated the statute. Section 922(a)(6) is written in very broad and general terms [ . . . knowingly to make *any* false or fictitious oral or written statement or to furnish or exhibit *any* false, fictitious or misrepresented identification, intended or *likely* to deceive such . . . dealer . . . with respect to *any fact material to the lawfulness of the sale* . . . (Emphasis added) ] and a wide range of actions could constitute a violation of the statute. Professor Wright states: "[i]f the statute is couched in general terms, the indictment must particularize the offense sufficiently to inform the defendant of the accusation he must meet." 1 C. Wright § 125, at 238. If the indictment had been limited merely to the statutory language, the defendant would probably have requested a bill of particulars under Rule 7(f) of the Federal Rules of Criminal Procedure to ascertain the specific accusation which he would have to meet. But because the indictment in the instant case specifically informed Behenna of the actions that the government contended were a violation of the statute, it was only logical that he would undertake to defend against the specific charge in the indictment.

disqualification, he acted without the required scienter in certifying that he was qualified." 420 F.2d at 460. Similarly, in the instant case, if defendant reasonably and honestly believed that he was entitled to purchase firearms in South Carolina, he acted without the scienter specifically charged in the indictment. He could not have "knowingly" misrepresented his eligibility to purchase firearms in regard to his residency if he reasonably and honestly believed that he was a South Carolina resident. Because the indictment specifically charged Behenna with knowingly misrepresenting that he was a South Carolina resident, the judge should have instructed the jury on that very narrow issue. The combination of the indictment as written and the court's instructions did not properly present the issue which had to be resolved by the jury in order to find Behenna guilty as charged.

Accordingly, the judgment of conviction is vacated and the case is remanded for new trial.

*Reversed and remanded.*

CRAVEN, Circuit Judge, dissenting:

Viewing the evidence and inferences from it in the light most favorable to the government, *United States v. VanFossen,* 460 F.2d 38, 40 (4th Cir. 1972), the jury could have fairly found that Behenna was an interstate gunrunner who pretended to be a South Carolina resident in order to buy handguns for his New York trade. The Congress has taken a dim view of the traffic and has extensively regulated it. 18 U.S.C. § 921, et seq. Behenna was indicted under the penalty section of the statute, 18 U.S.C. § 924, for violating 18 U.S.C. § 922(a)(6), which makes it an offense to knowingly make any false statement intended or likely to deceive the dealer with respect to any material fact going to the lawfulness of the sale. Because of 18 U.S.C. § 922(a)(5), the sales made to Behenna were unlawful if the dealer knew or had reasonable cause to believe Behenna resided in a state other than South Carolina. Therefore Behenna lied to the dealer. He gave as his "residence address" a large vacant lot on Highway 76 which he did not even own. Rabbits reside in fields. Persons do not. Since Behenna knew that he had to claim residence in South Carolina (the dealer had told him so), he obviously intended to falsely claim residence in South Carolina in a place fit for moles and birds but not for humans.

The indictment charged him with having falsely certified that he was a resident of South Carolina when, in truth and fact, as he well knew, he was not. To so certify violates the statute. 18 U.S.C. § 922(a)(6).

The district judge fairly and correctly charged the jury that the government must prove beyond a reasonable doubt "that the defendant knowingly made a false or fictitious statement . . . in connection with the firearm, which was likely or intended to deceive the dealer with respect to any material fact." Appendix at 101. The judge defined the meaning of residence, and if he erred, it was in favor of the defendant. After correctly telling the jury that "it is possible for a person to have more than one place of residence," Appendix at 110, giving as an example one who resides in South Carolina permanently but who has a summer home in Florida or in the North Carolina mountains, he then framed a question for the jury highly favorable to the defendant's contention: "Did the defendant really intend to become a resident of South Carolina when he obtained his voter registration and when he purchased the firearm in question?" That instruction was *more* than the defendant was entitled to. It put into the case the defendant's subjective intent which relates to *domicile, not* residence. Behenna's intention with respect to establishing a residence in South Carolina would become important if *domicile* were the question, but, even then, only if there was some evidence suggesting that he had done *something* toward making South Carolina his home or one of his homes, *e.g.,* renting a room, or buying a house, or taking household effects or clothing and leaving them in a place of habitation to which he expected to return. *See*

*Wehrle v. Brooks*, 269 F.Supp. 785 (W.D.N. C.1966). Here, there was not one scintilla of evidence that Behenna had done any such thing—other than to register to vote, and I would judicially notice there is no residency requirement to get a voter registration certificate in the State of South Carolina, *i.e.*, one does not have to be there any particular length of time in order to get such a certificate.

The definitions of residence are innumerable and varied. *See* 37 Words and Phrases, "Residence" (1950). But generally, it is necessary simply to establish an abode, albeit a temporary one. *Residence* "is a *physical fact* while *domicile* is a matter of intention." *Bouvier's Law Dictionary* 2920 (3d revision) (emphasis added).

My brothers contrive what seems to me an untenable theory: that since Behenna was not a lawyer and the definition of residence is not an easy one, he may have honestly believed that obtaining a voter registration card made him a resident of South Carolina. Why, then, would Behenna represent to the dealer that he resided on a vacant lot on Highway 76? Why not simply present the voter registration certificate and stop with that? All agree that Behenna made a false statement when he said he resided on a vacant lot, and, since he suggested no other possible place of abode, it is clear to me that he made a false statement when he represented himself to be a resident of South Carolina, and that he knew it when he made it.

I concurred in *Hedgecoe supra,* and would do so again. As the Eighth Circuit later noted in *Cody v. United States*, 460 F.2d 34, 38 n. 4, *Hedgecoe* had certified that he was not prohibited by the provisions of the Omnibus Crime Control and Safe Streets Act of 1968 from receiving a firearm, which involved an interpretation of law. I agree with the distinction made by the Eighth Circuit that the question in *Hedgecoe* was whether the defendant understood the *law*, and that the question in this case and in *Cody* was whether the defendant understood the *facts*. My brothers would convert this into a case requiring *legal* under-

standing because the indictment, rather than simply alleging that Behenna falsified his address (which they concede would have supported the conviction), alleged instead that Behenna certified in writing "that he was a resident of the State of South Carolina." They ignore the fact that part of that very certification in writing was his filling in a blank calling for "residence address." It is not unfair or unreasonable to read the indictment as alleging that Behenna claimed as his place of residence an open field in South Carolina when he "then and there well knew" it was in fact, if not uninhabitable by man, at least uninhabited by him.

The indictment and the district judge's charge, read together, made Behenna's state of mind—his knowledge of the falsity of his statement as to residence—a defense. I would not go further and hold, as does the panel, that he was entitled to an instruction—on these facts—that if he honestly and reasonably believed that he could legally purchase the guns the jury should acquit. To so charge puts into a regulatory measure enacted in the interest of public safety an idea of *mens rea*, or evil intent, that properly belongs in other areas of the criminal law. *See United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). It suffices under this statute and this indictment that Behenna lied about his place of residence—falsely claiming it to be an open field in South Carolina.