**STATE of Iowa, Appellee,**

v.

**John Raymond OSTRAND, Appellant.**

**No. 56698.**

Supreme Court of Iowa.

June 26, 1974.

**510**

James Q. Blomgren, of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

UHLENHOPP, Justice.

This criminal case involves an attempt by defendant John Raymond Ostrand to prove entrapment. The account of events he desired to place before the jury was strange, perhaps incredible, but we think he was entitled to present it for the jury's consideration. See Lufty v. United States, 198 F.2d 760, 762 (9 Cir.) ("The jurors, within their rights, could have believed appellant's testimony, however incredible it might appear to the trial court or to this court.").

Defendant and Michael Hagen were acquaintances who worked for the same employer. According to defendant, Hagen approached him several times about buying marijuana. The State's evidence showed Hagen told Iowa narcotics undercover agent Kenneth Arduser that defendant was supplying a large quantity of narcotics out of defendant's home.

On the evening of January 26, 1973, Arduser and Hagen went to defendant's home, where Arduser bought five lids (about five ounces) of marijuana from defendant for $65. When Arduser inquired about buying large quantities of marijuana, defendant stated he would be able to get them. Defendant asked if Arduser would be interested in buying large quantities of cocaine and stated he would also have a quantity of white cross pills (amphetamine) at a later date.

Arduser subsequently had the purchased material analyzed; it proved to be marijuana. Officers arrested defendant, the county attorney charged him with delivery of marijuana, and he stood trial.

During the State's evidence defendant's attorney, by various questions on cross-examination, tried to show the connection between Hagen and the officers, the functions of an informer, and related matters. The trial court sustained the prosecutor's objections to such questions. The status of Hagen as an informer and his relationship to the officers were thus left unclear.

Defendant took the stand in his defense and admitted the sale of the marijuana. The theory of his defense was entrapment.

He desired to show Hagen previously said to him that Hagen was in trouble with the police and was working with them; that Hagen had "to snitch" on some people to get himself free; and that Hagen asked defendant if he would help. Defendant's contention was that he thus believed the transaction of January 26 was part of that plan to aid the police, and that he made the sale because of Hagen's request. Defendant testified he thought he was not committing a crime by making the sale because he was participating in a police operation.

(How defendant thought he would be participating in a police operation by selling marijuana is a mystery, unless he thought the police were trying to catch Arduser, the purchaser. Presumably defendant did not then know that Arduser was an undercover agent.)

Defendant tried in various ways to prove his and Hagen's conversations that he contends induced the sale of the marijuana. The prosecutor objected on the ground of hearsay, and the trial court sustained the objections. At one point during defendant's testimony this occurred:

Q. [by Mr. Allen Rauch, defense counsel]: And why did you do this? Why did you sell this marijuana to him at this time? A. Back in—

Mr. Beck [prosecutor]: Your Honor, I think that question goes to a self-serving opinion on the part of this witness. It doesn't go to any facts in the case.

The Court: It might go to intent so I'll overrule it.

A. [by defendant]: Yes. Back just before Christmas Mike Hagen had told me he was—

Mr. Beck: Now, Your Honor, as to what Mike Hagen told this witness it is hearsay.

The Court: You can't go into a conversation. . . .

Mr. Rauch: Your Honor, I would like to see the Court and counsel con-cerning the hearsay objection because the conversation with Mike Hagen is very important at this point.

(The following record was made in chambers.)

Mr. Rauch: Your Honor, we are attempting to show that this one man by deceitful reputation [representation?] and inducement on the part of the informant, that he told him he was working with the police and he was doing this Hagen fellow a favor. Hagen came up to my man and he said, "I am in trouble with the police. I have got to snitch on some people to get myself free to get the charges dropped on me. Would you be willing to help me if and when I need you?" And I don't know how else we are going to get this in. We have no defense, and State v. Davis [apparently the case in 175 N.W.2d 407 (Iowa)], an informant entrapment type decision, the Supreme Court didn't say directly, but they allowed that sort of thing in trial in [Judge] John Hughes' court, and I would further contend that the informant is a part of it the same as the police officer because he was working with the State.

I mean is it the Court's position we have no defense in this matter?

The Court: My position is whatever conversation he had with the informant would be hearsay.

The result was that defendant was unable to show Hagen's alleged statements which defendant contends induced the sale.

At trial, defendant had short hair and no beard. The State's witnesses testified that defendant had long hair and a beard at the time of the sale. During defendant's testimony, after he had admitted he sold the marijuana to Arduser, the prosecutor introduced a photograph of defendant taken at about the time of the sale, showing defendant with long hair and a beard. Defendant objected to the picture as irrelevant and immaterial. The court overruled the objection.

The jury found defendant guilty, the trial court sentenced him, and he appealed.

In this court, defendant makes two main contentions. First, the trial court should have admitted the testimony of Hagen's statements which defendant asserts induced the sale. Second, the trial court should have excluded the photograph.

I. *Hagen's Statements.* Two lines of cases exist relating to the sources of inducing statements. On the one hand, entrapment cannot result from inducements merely by some private individual or by an accomplice. State v. White, 260 Iowa 1000, 151 N.W.2d 552. Thus, if a private individual puts another person up to the commission of a crime, that other person cannot successfully urge entrapment even though the private individual informs law officers that the crime is going to be committed. State v. Davis, 175 N.W.2d 407 (Iowa); see State v. Lamar, 210 N.W.2d 600 (Iowa). On the other hand, if law officers use an individual to help them arrange the commission of a crime by another person, the officers cannot disclaim the inducements such individual offers in the course of his efforts for the officers. Sherman v. United States, 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848, 852 ("The Government cannot disown Kalchinian [informer] and insist it is not responsible for his actions."); Notaro v. United States, 363 F.2d 169 (9 Cir.); Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127.

Therefore, the first step of a defendant urging entrapment by inducements by an individual who is not himself an officer is to tie that individual to the officers—to show he was acting for them. Under familiar principles, a defendant cannot do this by out-of-court declarations of the individual himself. Martin v. Jaekel, 188 N.W.2d 331 (Iowa). Frequently, however, the State's own evidence shows that the individual was working with the officers throughout.

The evidence in the present case shows that Hagen was acting for the officers at the time of the purchase of the marijuana. Does sufficient evidence appear to generate a fact question that he was previously so acting when the alleged inducing statements were made? The question is close, but the reason defendant did not introduce more evidence on the point is that the trial court would not permit defendant to show, on cross-examination of the State's witnesses, the relationship between the officers and Hagen and where Hagen fit into the picture. See Hughes v. United States, 427 F.2d 66 (9 Cir.). We do not feel justified in telling defendant he failed in his first step on entrapment when he did try to show Hagen's connection with the officers but the trial court would not admit the evidence. The trial court should have let in this testimony.

The next step of a defendant, if he has taken the first step, is to show the inducements by the entrapping individual. Normally these are in the form of oral statements by the individual. The defendant does not show the statements in order to prove the truth of them. Indeed, the defendant normally tries to show the statements were lies. Thus the statement of the individual may have been that he was horribly sick and withdrawn and had to have drugs at once, whereas the defendant shows at trial that this was false, that the individual was not even a drug user. Neither does the defendant try to show that the individual's particular statements were authorized by the officers; indeed, the individual may have manufactured the statements himself in his work for the officers. The defendant only attempts to show that the statements were in fact made and that he therefore sold the contraband. Thus the hearsay rule is not involved, as the defendant is not trying to prove the truth of the fact asserted in the statements. For the definition of hearsay, see State v. Miller, 204 N.W.2d 834 (Iowa).

In the present case defendant should have been allowed, first, to pursue his cross-examination of the officers concerning the part Hagen played for them from the beginning of this matter down to the sale. If defendant was able to show that Hagen was acting for the officers during the period he made the alleged entrapping statements, the defendant should have been permitted, second, to show such statements Hagen made in the course of assisting the officers. For decisions involving inducements by various individuals, see United States v. Brewbaker, 454 F.2d 1360 (7 Cir.); United States v. Brown, 453 F.2d 101 (8 Cir); United States v. Smith, 452 F.2d 404 (8 Cir.); United States v. Haley, 452 F.2d 391 (8 Cir.); Pulido v. United States, 425 F.2d 1391 (9 Cir.); United States v. Finley, 421 F.2d 172 (10 Cir.); Powell v. United States, 420 F.2d 799 (9 Cir.); Eisenhardt v. United States, 406 F.2d 449 (5 Cir.); State v. Martin, 106 Ariz. 227, 474 P.2d 818; Liptak v. State, 256 So.2d 548 (Fla.App.); People v. Abbott, 110 Ill.App. 2d 462, 249 N.E.2d 675; State v. Bradshaw, 12 N.C.App. 510, 183 S.E.2d 787; Garcia v. State, 473 S.W.2d 488 (Tex.Cr. App.).

We think the case should be retried so that the defendant can endeavor to establish his defense. Enough appears from the present record to disclose what he was trying to show. We do not intimate, of course, whether defendant will on retrial be able to generate a fact question on entrapment. We realize, too, that the jury may disbelieve defendant's account as incredible, but we cannot substitute our views for those of the jury.

II. *Photograph.* The photograph would normally be relevant on identification of defendant. But at the time the court admitted the photograph, defendant had testified that he sold the marijuana to Arduser as charged by the State. Hence the photograph was no longer necessary. Nonetheless, we would not reverse on this account, as trial courts have considerable

discretion in such matters. State v. Youngbear, 202 N.W.2d 70 (Iowa).

But should the case develop in the same way on retrial, we think the photograph should not be received in evidence. If defendant admits he sold the marijuana as charged, the only purpose we can see for thereafter introducing the picture would be to display to the jury defendant's long hair and beard at the prior time, but defendant is not on trial for that.

We return the case to district court for retrial.

Reversed.